J-A27017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CHRISTOPHER ANTON JOHNSON :
:
Appellant : No. 1115 EDA 2021

Appeal from the Judgment of Sentence Entered May 3, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001734-2019

BEFORE: PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED JANUARY 4, 2022**

Christopher Anton Johnson appeals from the judgment of sentence entered following his conviction for Persons Not to Possess, Use, Manufacture, Control, Sell, or Transfer Firearms, 18 Pa.C.S.A. § 6105(a)(1). Johnson argues that the trial court erred in denying his motion to suppress based on an illegal vehicle stop. We affirm.

The trial court set forth the underlying facts as follows:

On February 26, 2019, at approximately 1:00 pm, Officer Joshua Keenan[,] Officer Fritchman[,] and Officer Carl Robinson, Jr. [ ] of the Norristown Police Department were conducting a directed drug patrol near the intersection of Noble and West Lafayette Street in Norristown, Montgomery County, Pennsylvania. The area of Noble and West Lafayette Street is regarded as a high crime and drug trafficking area, rife with frequent calls for overdoses, and where all three officers had each previously made drug arrests. On this particular occasion, [Officer] Robinson was conducting surveillance of a suspected drug location in the 200 block of Noble Street.

During the third week of February 2019, [Officer] Robinson received information from a reliable confidential informant ("CI") that a "subject, who the confidential informant knew only as 'Q-Blizz,' was riding around in a blue Chevy Cruze with tinted windows, selling narcotics in Norristown . . . heroin and crack cocaine - - and that he was armed with a firearm." [Officer] Robinson, a member of the Norristown Police Department since 2004, and the Montgomery, County Drug Task Force since 2007, has extensive training in and experience with drug trafficking. [Officer] Robinson had worked with this CI for approximately two (2) years, during which time the CI had provided information to him which, as of the date of the suppression hearing, resulted in six (6) narcotics convictions and firearm violations with several more cases pending. . . .

While conducting surveillance from his unmarked vehicle, [Officer] Robinson initially observed a blue Chevy Cruze, bearing PA registration KXE-4603, with heavily tinted windows, parked with its engine running on the east side of Noble Street in the 200 block. [Officer] Robinson further observed that, with the exception of the front windshield, the vehicle had dark tint on all of its windows, obscuring its interior from view, which [Officer] Robinson deemed from his training and experience to be a violation of the Motor Vehicle Code.

While surveilling the vehicle, [Officer] Robinson saw a male exit the front driver's seat of the vehicle, switch places with a female front passenger, at which point the vehicle now operated by the female drove north on Noble Street. Having determined that the vehicle's color, make, model, heavily tinted windows, male occupant, and location were consistent with the information previously provided by the CI as a vehicle involved in drug trafficking in Norristown, [Officer] Robinson radioed [Officers] Keenan and Fritchman [ ] the vehicle's location, its northbound travel on Noble Street and that it matched information received approximately one week earlier from the CI as the vehicle involved in heroin and crack cocaine sales and associated with a male armed with a gun.

[Officer] Keenan observed the vehicle's heavily tinted windows, which despite broad daylight prevented him from identifying either the driver or the passenger, or seeing the

- 2 -

vehicle's interior clearly, and he likewise concluded the tint to be illegal. In addition to directing them to the vehicle's location, [Officer] Keenan testified that [Officer] Robinson specifically alerted [Officers] Keenan and Fritchman that the vehicle matched the description [Officer] Robinson had "received[, that] an individual by the nickname of Q-Blizz was traveling in that vehicle doing narcotics sales in Norristown and carrying a firearm." Based on [Officer] Keenan's observation of the illegal tint, [Officers] Keenan and Fritchman initiated a traffic stop of the vehicle at West Main and Pearl Streets. As the vehicle pulled over, [Officer] Keenan, who also had extensive narcotics investigative training, observed the outline of the vehicle's front passenger, later identified as [Johnson], bending forward and reaching around the interior of the vehicle. . . .

Trial Ct. Op., 8/3/21, at 1-3 (footnotes omitted).

Officers found "142 pre-packaged blue wax paper bags filled with an off white powder consistent with heroin[,] approximately 57 clear wax paper bags filled with a rock like substance consistent with crack cocaine[,] one yellow packet filled with white powdered cocaine[,]" and a ".40 caliber handgun" inside of the car. Affidavit of Probable Cause, 2/26/19, at 7. The traffic stop resulted in officers arresting Johnson and the Commonwealth charging him with several crimes including persons not to possess firearms. Johnson filed a Pre-Trial Motion to Suppress, claiming that the stop was unreasonable. The trial court denied the motion to suppress, concluding that the stop was reasonable based on the officers' "observation of the vehicle's heavily tinted windows, which they reasonably believed to be in violation of the Motor Vehicle Code[.]" Order Sur: Suppression, 1/22/20, at 8. The court also opined that the CI's information gave officers reasonable suspicion to stop the vehicle.

*Id.* Johnson proceeded by way of a stipulated trial and the court found him guilty of the firearms charge. The trial court sentenced Johnson to 6 to 12 years' incarceration and this timely appeal followed.

Johnson raises one issue before this Court: "Whether the trial court erred in denying [Johnson's] Motion to Suppress Evidence which challenged the lawfulness of a vehicle stop in which [Johnson] was a passenger?[1]" Johnson's Brief at 4.

When reviewing the denial of a motion to suppress, we must determine whether the trial court's factual findings are supported by the record. *Commonwealth v. Wright*, 224 A.3d 1104, 1108 (Pa. Super. 2019), *appeal denied*, 237 A.3d 393 (Pa. 2020) (citation omitted). We are bound by the factual findings of the court that are supported by the record but our scope of review of its legal conclusions is plenary. *Id.* (citation omitted). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* (citation omitted). We limit our review of the record to that of the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013) (it is "inappropriate" to consider evidence outside of the suppression record on suppression issues).

---

[1] We note Officer Robinson witnessed Johnson "exit the front drivers['] seat of the vehicle and get into the front passenger seat" before the vehicle left the area of Noble and West Lafayette Streets. Affidavit of Probable Cause at 6.

- 4 -

Johnson argues the factual findings of the court, that the officers' stop was supported by probable cause and reasonable suspicion, are not supported by the record. *See* Johnson's Brief at 9. Specifically, he challenges the court's factual finding that officers were not able to see into his vehicle. *Id.* Johnson maintains that the testimony of Officer Keenan showed that he could "see the general outline of someone in the passenger seat 'moving forward[ ]'" despite the vehicle's tint. *Id.* Johnson maintains that because officers could see into the vehicle, they did not have probable cause to stop the vehicle. *See id.*

To support his argument, Johnson compares this incident to a vehicle stop in *Commonwealth v. Brubaker*, 5 A.3d 261 (Pa. Super. 2010). In *Brubaker*, the officer initiated a traffic stop for a violation of 75 Pa.C.S. § 4524(e), relating to illegal tint on vehicle windows. The officer in *Brubaker* testified the defendant's car did not have "the darkest [tint] that [he had] ever tested," that it was a "mid-range window tint," that he could "see figures in the vehicle[,]" and he "could see there was a driver." *Brubaker*, 5 A.3d at 263. The officer further admitted that during "daylight conditions[,]" he could "see and view [the] inside of the vehicle through the windshield, side windows, and side wings[.]" *Id.* The officer's concern was that "during nighttime conditions[,] seeing inside of the vehicle may not have been as advantageous as it was during[ ] the afternoon" when he observed the vehicle. *Id.*

Section 4524(e) of the Motor Vehicle Code addresses illegal tint and reads in part: "No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the

inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S.A. § 4524(e)(1). "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017) (citation omitted). An officer has probable cause to initiate a traffic stop of a vehicle under Section 4524(e) where there is testimony of an inability to see inside the vehicle due to the tint on the windows of the vehicle. *See Commonwealth v. Randolph*, 151 A.3d 170, 176 (Pa.Super. 2016) (appellant could not challenge a traffic stop due to his tinted windows violating the traffic code).

Here, Johnson mischaracterizes the testimony of Officer Keenan. Unlike the officer in *Brubaker*, Officer Keenan testified that he "could not clearly see inside the vehicle." N.T., Hearing on Motion to Suppress, 11/26/19, at 24. He "could not clearly see specific hands; [but] could just see outlines or shapes[.]" *Id.* He was not able to determine whether the occupants of the vehicle were male or female. *Id.* Thus, while he did testify that he "saw movement in the vehicle," he maintained that he could not clearly see into the vehicle. *Id.* at 28. Furthermore, Officer Robinson testified that when he initially observed the vehicle, he could not see inside the car. *Id.* at 13-14. Both officers averred that they observed the vehicle in "broad daylight" and, again unlike the officer in *Brubaker*, still could not see inside the vehicle due to its "heavy tint." *Id.* at 12, 20, 25. Moreover, the officer in *Brubaker* testified that he **could** see into the vehicle "through the windshield, side

- 6 -

windows, and side wings" whereas here, neither officer could clearly see into Johnson's vehicle. **Brubaker**, 5 A.3d at 263. Therefore, the trial court's factual finding, that there was probable cause to conduct the stop, is supported by the record.

Johnson also raises the argument that the trial court erred in concluding that officers had reasonable suspicion to stop the vehicle based on the information provided by the CI. **See** Johnson's Brief at 11. He alleges that "the absence of any articulable facts from which police could conclude that [Johnson] was engaged in criminal activity at the time of the stop, is fatal to the Commonwealth's case." **Id.** at 13 (emphasis omitted). Thus, he argues that the information provided by the CI "did not give officers any reason[ ] to believe that drugs were in the vehicle at the time the information was provided, let alone [10] days thereafter." **Id.** Johnson likens this case to **Commonwealth v. Wilson**, 622 A.2d 293 (Pa. Super. 1993). In **Wilson**, this Court concluded reasonable suspicion was lacking due to "the failure of the [CI] to provide the police with any 'time-frame' within which these activities allegedly were committed by the defendant." **Wilson**, 622 A.2d at 296 (emphasis omitted).

Because we conclude the trial court's probable cause determination is supported by the record, we need not address Johnson's argument regarding reasonable suspicion. The heavy tint on Johnson's vehicle that prevented officers from being able to see inside gave officers probable cause to initiate the traffic stop.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/4/2022</u>