J-S62028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ORONDA A. RAHATT, | |
| Appellant | No. 2990 EDA 2013 |

Appeal from the Judgment of Sentence of October 15, 2013
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001772-2012

BEFORE:  ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 27, 2014**

Appellant, Oronda A. Rahatt, appeals from the judgment of sentence entered on October 15, 2013, as made final by the denial of his post-sentence motion on February 12, 2014.  We affirm.

The trial court accurately summarized the factual background of this case as follows:

> On April 18, 2012, in the early evening hours, Officer Kirt Guyer was on routine uniform patrol for the City of Coatesville Police Department.  Officer Guyer along with Officer Chris McCarthy were dispatched to the Kool Bar located at 336 E. Lincoln Highway, Coatesville, Chester County, Pennsylvania for a report of a black man with a gun following a 911 call from an anonymous female. The Coatesville Police Department characterizes the Kool Bar as a nuisance bar because of how often they are dispatched to the establishment.  Specifically, over the past several years officer[s] responded to this location for reports of various criminal activities including[,] but not limited to[,] fights, drug dealing[,] and aggravated assaults. Upon arriving at the Kool Bar, Officer McCarthy was approached

by [James Hilton ("Hilton")] who stated that a black man wearing a white baseball hat approached him in the bar and asked if he had a problem. Officer McCarthy knew [Hilton] from prior encounters. [Hilton] provided a better description of the suspect while speaking with the officer[s] outside. Specifically, [Hilton] stated that the suspect was also wearing a pink shirt during this conversation with the officer[s]. Moreover, [Hilton] stated that a female friend informed him that she observed the same black male, wearing a pink shirt and white baseball hat, pull a gun on a female bar patron. The officers instructed [Hilton] to return inside the bar and ask his female friend to come outside and talk with them.

As [Hilton] was returning inside the bar and while the officers were still in the parking lot, Officer Guyer observed [Appellant] walk out of the bar with an intoxicated stagger, and wearing a pink shirt and a white baseball hat. As the officers approached [Appellant], their suspicion that [Appellant] maybe [sic] intoxicated was further corroborated by the fact that they observed [Appellant] with bloodshot eyes and with an odor of alcohol emanating from his person. At this point, officers stopped [Appellant] and subjected him to a protective pat-down search. Prior to frisking [Appellant], Officer Guyer asked him if he had any weapons on him to which [Appellant] replied, "No." However, while frisking [Appellant], Officer McCarthy alerted Officer Guyer that he felt a bulge in [Appellant's] right front pants pocket. Specifically, Officer McCarthy felt a hard, L-shaped object in that pocket and based on his training and experience he believed it to be a firearm. Consequently, [Appellant] was placed in handcuffs as a safety precaution and Officer Guyer retrieved a black, Makarov []9mm, semi-automatic handgun from [Appellant's] right front pants pocket.

Further inspection of the firearm revealed that it had the serial number filed off the frame. Moreover, the gun magazine contained five []9mm bullets and a sixth bullet was present in the chamber of the weapon. A check of [Appellant's] criminal history report revealed that [Appellant] was a previously convicted felon and could not lawfully possess a firearm. Furthermore, [Appellant] did not possess a valid license to lawfully carry a firearm on the night in question.

Trial Court Opinion, 6/10/14, at 2-3 (internal citations and certain internal quotation marks omitted).

The procedural history of this case is as follows. On April 18, 2012, a criminal complaint was filed charging Appellant with possession of a firearm by a prohibited person,[1] disorderly conduct,[2] carrying a loaded weapon other than a firearm,[3] altering a serial number of a firearm,[4] and criminal trespass.[5] On May 24, 2012, a criminal information was filed charging Appellant with possession of a firearm by a prohibited person, disorderly conduct, and carrying a firearm without a license.[6] On February 21, 2013, Appellant filed a motion to suppress the firearm seized from his person. On March 26, 2013, a suppression hearing was held at the conclusion of which the trial court denied the motion to suppress.

On June 7, 2013, defense counsel was permitted to withdraw and Appellant was permitted to proceed *pro se*.[7] On June 10 and June 28, 2013, Appellant filed *pro se* motions to suppress. A second suppression hearing

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

[2] 18 Pa.C.S.A. § 5503(a)(4).

[3] 18 Pa.C.S.A. § 6106.1(a).

[4] 18 Pa.C.S.A. § 6117(a).

[5] 18 Pa.C.S.A. § 3503(b)(1)(i).

[6] 18 Pa.C.S.A. § 6106(a)(1).

[7] Appellant's previously appointed attorney remained attached to this matter in the capacity of stand-by counsel.

was held on July 8, 2013 at the conclusion of which the trial court denied Appellant's motions to suppress. Trial commenced on August 19, 2013. On August 21, 2013, Appellant was found guilty of possession of a firearm by a prohibited person and carrying a firearm without a license. On October 15, 2013, Appellant was sentenced to an aggregate term of five to ten years' imprisonment.

On October 24, 2013, Appellant filed a *pro se* post-sentence motion and notice of appeal.[8] On December 2, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). ***See*** Pa.R.A.P. 1925(b). That same day, at Appellant's request, the trial court appointed counsel for this direct appeal. On February 12, 2014, Appellant's post-sentence motion was denied via operation of law.[9] ***See*** Pa.R.Crim.P. 720(B)(3)(b). On May 16, 2014, Appellant filed his concise statement, which included his sole issue on appeal. On June 9, 2014, the trial court issued its Rule 1925(a) opinion.

Appellant presents one issue for our review:

---

[8] This Court could have quashed Appellant's notice of appeal as interlocutory in nature. ***See Commonwealth v. Rigg***, 84 A.3d 1080, 1082 n.1 (Pa. Super. 2014) (citation omitted). Four months after the notice of appeal was filed, however, Appellant's judgment of sentence became final when his post-sentence motion was denied by operation of law. Pursuant to Pennsylvania Rule of Appellate Procedure 905(a)(5), the notice of appeal was thereafter deemed filed as of February 12, 2014.

[9] We note that the clerk of courts failed to enter an order denying Appellant's post-sentence motion by operation of law as required by Pennsylvania Rule of Criminal Procedure 720(B)(3)(c).

- 4 -

Whether the trial court erred in denying Appellant's motion to suppress physical evidence?

Appellant's Brief at 5.

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the [trial] court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Stem**, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Commonwealth v. Gary**, 91 A.3d 102, 106 (Pa. 2014) (citation omitted).

We note the procedural posture of this case and how that impacts our scope of review in this case. The relevant suppression hearing in this case occurred in March 2013 and the trial occurred in August 2013. In October 2013, our Supreme Court decided **L.J.** In **L.J.**, our Supreme Court held that this Court's scope of review when reviewing a suppression court's denial of a suppression motion is limited to the evidence presented at the suppression hearing. **L.J.**, 79 A.3d at 1085. However, our Supreme Court chose to apply this rule prospectively instead of retroactively. **Id.** at 1088-1089. As the suppression hearing and trial in this case occurred prior to **L.J.**, we may

review both the evidence presented at trial and the evidence presented at the suppression hearing. *See id.* at 1089 ("All litigation commenced Commonwealth-wide after the filing of [*L.J.*], will be considered in accord with [that] opinion.").

Appellant argues that the police officers detained him, and patted him down for weapons, without reasonable suspicion. Thus, he contends that the search violated both the state and federal constitutions. "As we have explained, the Fourth Amendment to the United States Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures. To safeguard these rights, courts require police to articulate the basis for their interaction with citizens in three increasingly intrusive situations." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013) (internal alterations, quotation marks, and citation omitted).

We have described three types of police/citizen interactions, and the necessary justification for each, as follows:

> The first of these is a mere encounter (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an investigative detention, must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or custodial detention must be supported by probable cause.

*Commonwealth v. Williams*, 73 A.3d 609, 613–614 (Pa. Super. 2013), *appeal denied*, 87 A.3d 320 (Pa. 2014) (internal alteration, quotation marks,

and citation omitted). On a motion to suppress, the burden is on the Commonwealth to prove, by a preponderance of the evidence, that the evidence seized from Appellant was legally obtained. *See Commonwealth v. Howard*, 64 A.3d 1082, 1087 (Pa. Super. 2013), *appeal denied*, 74 A.3d 118 (Pa. 2013) (citation omitted).

> In this case:
>
> [T]he frisk at issue constituted an investigative detention in the nature of a protective weapons search which is governed by *Terry [v. Ohio*, 392 U.S. 1 (1968)] . . . and requires that police have reasonable suspicion either that criminal activity was afoot or that appellant was armed and dangerous to them:
>
> It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. Since the sole justification for a *Terry* search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

*Commonwealth v. Scarborough*, 89 A.3d 679, 683 (Pa. Super. 2014) (citation omitted).

> As we have explained:
>
> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. . . . In assessing the totality of the circumstances, courts must also afford due

weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

The determination of whether an officer had reasonable suspicion . . . is an objective one, which must be considered in light of the totality of the circumstances.

*Clemens*, 66 A.3d at 379 (ellipsis and citation omitted).

In this case, the officers had reasonable suspicion that criminal activity was afoot and that Appellant was armed and dangerous. The incident in question occurred at a nuisance bar. An anonymous caller to 911 said that an African-American male at the location was armed. Hilton informed the officers that an individual matching Appellant's description had threatened a female bar patron with a firearm. Hilton's description of Appellant was not general. Instead, it was a very specific description – an African-American male wearing a white baseball cap and a pink shirt.

Appellant's argument that the anonymous tip was insufficient to provide the officers with reasonable suspicion ignores the fact that the information from the anonymous tip was corroborated by Hilton. *See Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010) (citation omitted) ("An anonymous tip, corroborated by independent police investigation, may exhibit sufficient indicia of reliability to supply reasonable suspicion for an investigatory stop."). Furthermore, Hilton was known to the police officers who arrived on scene. *See Commonwealth v. Washington*, 63 A.3d 797, 803 (Pa. Super. 2013) ("a tip from an informer known to the

police may carry enough indicia or reliability for the police to conduct an investigatory stop"). Although further investigation and corroboration may have been necessary to obtain probable cause to arrest Appellant, the officers only needed reasonable suspicion to conduct a *Terry* frisk. We conclude that the officers in this case had the requisite reasonable suspicion.

Although the evidence was sufficient to give the officer's reasonable suspicion that Appellant possessed a firearm, and therefore the officers could lawfully conduct a *Terry* frisk, Appellant contends that the evidence used to establish that the police had reasonable suspicion should not have been admitted as it violated his right to confront witnesses guaranteed by the Sixth Amendment of the United States Constitution. The Sixth Amendment provides that, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. The Sixth Amendment has been applied to the states through incorporation into the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

We conclude that Appellant's confrontation rights were not violated. In order for the Confrontation Clause to be applicable, a defendant must be denied the right to confront a witness. Witnesses are "those who bear testimony." *Michigan v. Bryant*, 131 S.Ct. 1143, 1153 (2011) (internal quotation marks and citation omitted). Testimony is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact."

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (internal quotation marks and citation omitted).

Appellant relies upon *Crawford v. Washington*, 541 U.S. 36 (2004), for the majority of his Confrontation Clause argument. The facts in the instant case; however, are distinguishable from the facts in *Crawford*. In *Crawford*, the defendant stabbed a man who had attempted to rape his wife. *Id.* at 38. At trial, the state played a tape of defendant's wife describing the stabbing. *Id.* The Supreme Court of the United States emphasized that the Confrontation Clause does not bar admission of statements offered for a purpose other than to prove the truth of the matter asserted. *Id.* at 59 n.9 (citation omitted). It concluded; however, that in *Crawford* the wife's statements were offered for the truth of the matter asserted and, therefore, concluded that the defendant's Confrontation Clause rights had been violated. *See id.* at 68.

In this case, the statements of Hilton, the female bar patron, and the female that called 911 included within Officer Guyer's testimony were not solemn declarations made for the purpose of establishing or proving Appellant's guilt. Instead, they were merely being offered to show why Officer Guyer believed that criminal activity may be afoot and Appellant may be armed, and therefore conducted a *Terry* frisk. In other words, Officer Guyer's recitation of what Hilton told him, and what the 911 caller had relayed to police, was merely used to explain his course of conduct. It is

well-settled that such course of conduct testimony does not violate the Confrontation Clause. ***Commonwealth v. Carson***, 913 A.2d 220, 258 (Pa. 2006); ***Williams v. Chrans***, 894 F.2d 928, 932 (7th Cir. 1990); ***see Commonwealth v. Dargan***, 897 A.2d 496, 500 (Pa. Super. 2006) (citations omitted) (course of conduct testimony is not hearsay and the Confrontation Clause only applies to hearsay); ***see also Commonwealth v. Trinidad***, 96 A.3d 1031, 1037 (Pa. Super. 2014) (citations omitted) ("It is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted."); ***Illinois v. Sangster***, 8 N.E.3d 1116, 1132 (Ill. App. 2014) (double hearsay is admissible to show course of conduct). Thus, Appellant's rights under the Confrontation Clause were not violated. Accordingly, the trial court properly denied Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/27/2014

- 11 -