J-A08019-19

2019 PA Super 201

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br><br>Appellee<br><br>v.<br><br>MICHAEL PRENTICE HANDLEY<br><br>Appellant | IN THE SUPERIOR COURT<br>OF PENNSYLVANIA<br><br><br><br><br><br>No. 932 WDA 2018 |

Appeal from the Judgment of Sentence Entered May 30, 2018
In the Court of Common Pleas of Beaver County
Criminal Division at No: CP-04-CR-001321-2016

BEFORE:  PANELLA, P.J., STABILE, and McLAUGHLIN, JJ.

OPINION BY STABILE, J.:                    **FILED JUNE 28, 2019**

Appellant, Michael Prentice Handley, appeals from the May 30, 2018 judgment of sentence imposing five years of probation for one count of possession with intent to deliver ("PWID") a controlled substance.  We affirm.

The trial court recited the pertinent facts in its opinion of January 16, 2018:

> On August 27, 2015 [Detective Gregory Carney, of the New Sewickley Township Police Department], responded to a report from an employee of PennEnergy.  The employee advised that he was at 1100 Blank Road clearing land to install a natural gas well pad when he was approached by [Appellant] and an argument ensued regarding the property line.  The employee further advised that [Appellant] threatened to get his gun and then went into his residence.  The employee then heard four or five gunshots, left the area and called the police.  Det. Carney, accompanied by Patrolman [Thomas] Liberty and Patrolman [Timothy] Sovich, went to [Appellant's] residence; Det. Carney testified that at that time it was only his intention to speak with [Appellant] about this incident.

Det. Carney immediately observed a strong odor of marijuana at [Appellant's] residence. Ptlm. Liberty and Det. Carney knocked on the door and received no response. From the home's front porch Det. Carney could observe a firearm lying on the table inside the home. By looking through the home and looking through a sliding glass door leading to the side of the home he could also observe a [sic] two garbage bags sitting outside. One bag had a green marijuana stem protruding from the side and dried marijuana leaves on top; the other bag had a green marijuana stem on top of it. Det. Carney could immediately observe the marijuana leaves from this vantage point on the porch; as he walked around the outside of the residence he could more clearly observe the bags and the marijuana stems. Det. Carney made these observations without opening the bags. Det. Carney applied for and was issued a search warrant for the home. Upon executing the warrant, Det. Carney, accompanied by four other officers, found 33 marijuana plants and numerous jars containing marijuana. [Appellant and his wife] arrived at the residence while the officers were searching and were arrested.

Trial Court Opinion, 1/16/18, at 2-3.

Appellant filed a pre-trial motion to suppress the evidence gathered during the execution of the search warrant, arguing that the supporting affidavit failed to establish probable cause. The trial court denied that motion on January 16, 2018. The case proceeded to a bench trial on stipulated facts, at the conclusion of which the trial court found Appellant guilty of PWID and imposed sentence as set forth above. This timely appeal followed.

Appellant presents two questions four our review:

Did the trial court err when it denied Appellant's motion to suppress where the evidence presented demonstrates that law enforcement lacked probable cause to obtain a search warrant of the residence?

Did the trial court err when it denied Appellant's motion challenging marijuana's Schedule I classification when the Pennsylvania legislature enacted a comprehensive medical

marijuana program, where marijuana otherwise does not meet the criteria for a Schedule I controlled substance, and were marijuana's Schedule I classification other otherwise [sic] unconstitutional on its face?

Appellant's Brief at 5. We will consider these issues in turn.

The scope of our review of an order denying suppression of evidence is limited to the suppression court's factual findings and legal conclusions. *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013). "As for the record, we are limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record as a whole." *Id.* A reviewing court cannot look beyond the evidentiary record created at the pre-trial suppression hearing. *Id.* at 1087. Probable cause exists when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009). In discerning whether probable cause exists, the issuing authority cannot consider evidence outside the four corners of the affidavit. *Commonwealth v. Ryerson*, 817 A.2d 510, 513 (Pa. Super. 2003).

> Pursuant to the 'totality of the circumstances' test set forth by the United States Supreme Court in [*Illinois v. Gates*, 462 U.S. 213 (1983)] the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence

of a crime will be found in a particular place…. It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

[Further,] a reviewing court [is] not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

*Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa. 2010). "A grudging or negative attitude by reviewing courts towards warrants ... is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Id.* at 655–56 (quoting *Gates*, 462 U.S. at 236).

The affidavit of probable cause stated that Detective Carney noted a strong odor of marijuana when he approached Appellant's house to speak to him about his aggressive behavior toward the PennEnergy employee. N.T. Hearing, 8/1/17, at 21-22; Commonwealth's Exhibit 3.[1] The affidavit also stated that Detective Carney observed marijuana leaves and stems protruding from holes in a garbage bag outside the residence. *Id.* Closer inspection of the trash bag revealed multiple stems and leaves from marijuana plants. *Id.*

_____

[1] Detective Carney read the contents of the probable cause affidavit into the record at the suppression hearing.

- 4 -

at 22. Detective Carney requested a warrant to search the residence, outbuildings, curtilage, and a camper. *Id.*

A strong smell of marijuana emanating from a residence creates probable cause to procure a search warrant. *Commonwealth v. Johnson*, 68 A.3d 990, 936 (Pa. Super. 2013) ("Having detected the strong smell of marijuana emanating from [the defendant's] trailer, [the investigating officers] had probable cause to obtain a search warrant]); *Commonwealth v. Waddell*, 61 A.3d 198, 215 (Pa. Super. 2012) ("The evidence certainly surpassed the threshold necessary to establish probable cause after [the investigating officer] detected the smell of marijuana emanating from [the defendant's] house.").

Thus, the odor of marijuana, in and of itself, was sufficient to support issuance of a warrant. Additionally, Detective Carney described his observation of numerous marijuana stems and leaves in a trash bag outside of Appellant's home. Appellant argues the affidavit is deficient because Detective Carney did not explain how he was able to recognize the odor of marijuana or the appearance of the plants. But Appellant fails to cite any law holding that the affidavit could not support a finding of probable cause without that information. Appellant also challenges the breadth of the search, arguing that the affidavit provided no basis for a search of outbuildings and camper. Appellant fails to develop this argument legally, and he does not specify what evidence, if any, police recovered from the camper or out buildings. Detective

- 5 -

Carney's testimony describes contraband recovered from Appellant's house, but not from any other structure. N.T. Hearing, 8/8/17, at 23-24. Based on all of the foregoing, we conclude that the record contains substantial evidence supporting the issuance of the search warrant.

In his second argument, Appellant claims that Schedule I of the Controlled Substance, Drug, Device and Cosmetic Act is unconstitutional insofar as it includes marijuana. 35 P.S. § 780-104(1)(iv)[2]. Pennsylvania's Medical Marijuana Act ("MMA") took effect on May 17, 2016. 35 P.S. § 10231.101, *et seq.* Pursuant to that Act, the General Assembly found that "[s]cientific evidence suggests that medical marijuana is one potential therapy that may mitigate suffering in some patients and also enhance quality of life." 35 P.S. § 10231.102(1). Appellant argues that Schedule I limits its applicability to substances with no currently accepted medical use, and because MMA is now in effect, Appellant argues that marijuana cannot constitutionally remain on Schedule I. He offers a lengthy history of the criminalization of marijuana and claims that Pennsylvania's current statutory framework is untenable, given an irreconcilable conflict, as to marijuana, between Schedule I and the MMA. This Court addressed similar arguments in *Waddell* and *Commonwealth v. Jezzi*, ___ A.3d ___, 2019 WL 1870750 (Pa. Super. April 26, 2019).

---

[2] 1972 P.L. 233, No. 64 § 4, as amended. A newly amended Schedule I, with revisions not pertinent this matter, will go into effect on October 23, 2019.

- 6 -

First, Appellant addresses the statutory construction of Schedule I in light of the MMA. Appellant's Brief at 18-21. This Court offered a statutory construction of Schedule I in **Waddell** in response to an argument very similar to Appellant's. Waddell argued that marijuana's inclusion in Schedule I was invalid because, as of that time, several other states recognized medical uses of marijuana:

> [Waddell] claims that principles of due process demand that prosecution under the provisions of the [CSA] which prohibit various activities relating to controlled substances (in this case the possession and the possession with intent to deliver controlled substances), is barred with respect to marijuana as marijuana ostensibly has ceased to qualify as a Schedule I controlled substance under the Drug Act.

**Waddell**, 61 A.3d at 200, 203.

The **Waddell** Court explained our standard for reviewing the constitutionality of a statute:

> It is axiomatic that: [A]ny party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a demonstration that the statute clearly, palpably, and plainly violates the Constitution. The presumption that legislative enactments are constitutional is strong. All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. Moreover, statutes are to be construed whenever possible to uphold their constitutionality.

**Id.** at 202 (internal citations and quotation marks omitted) (quoting **DePaul v. Commonwealth**, 969 A.2d 536, 545-46 (Pa. 2009)).

The **Waddell** Court went on to construe the pertinent language of Schedule I, which provides in relevant part:

**(1) Schedule I--**In determining that a substance comes within this schedule, the secretary shall find: a high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision. The following controlled substances are included in this schedule:

[…]

(iv) Marihuana

35 P.S. § 780-104(1)(iv).

*Waddell* held that the two sentences of § 780-104(1) are to be read independently. The first sentence applies prospectively, governing the conditions for adding a substance to Schedule I. *Waddell*, 61 A.3d at 206. "The second sentence of 35 P.S. § 780–104(1) is most logically read to act independently of the first, establishing a list of Schedule I controlled substances that are not dependent on the criteria set forth allowing additions to Schedule I by "the secretary" that is set forth in the first sentence." *Id.* Therefore, the substances originally listed in Schedule I were included regardless of their compliance with the conditions specified in the first sentence of § 780-104(1). *Id.* Moreover, substances listed in Schedule I need not remain in continuous compliance with that sentence. *Id.*

It is clear that a narrow reading of the express and plain meaning of the statute indicates that there is no requirement that the Schedule I substances listed under 35 P.S. § 780–104 continuously conform to the standard that there be "a high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision." 35 P.S. § 780–104(1). Accordingly, we reject [a]ppellant's suggested interpretation and conclude that his due process claim lacks merit. **Regardless of whether there are accepted medical uses for marijuana in the United States,**

> **marijuana remains a Schedule I substance under the Drug Act.**

*Id.* at 207 (emphasis added). This Court rejected Waddell's due process argument because it rested on a faulty interpretation of the CSA. *Id.*

Given the foregoing, we also cannot accept Appellant's argument that *Waddell* is distinguishable because it predates the MMA. In *Waddell*, as here, the appellant argued that mounting evidence of marijuana's medicinal value renders Schedule I constitutionally invalid insofar as it includes marijuana. *Waddell* rejected that argument, holding that Schedule I controlled substances need not continuously conform to the first sentence of § 780-104(1).[3] Thus, there is no conflict between Schedule I, as construed in *Waddell*, and the MMA. In essence, Appellant invites this Court to construe Schedule I in precisely the way the *Waddell* Court rejected. Appellant's Brief at 18-21. We decline to do so, as we believe the enactment of the MMA does not affect the *Waddell* Court's construction of § 780-104(1).

Appellant also raises substantive due process and equal protection arguments. We will consider these arguments in turn. The Fourteenth Amendment to the United States Constitution provides that no state shall

---

[3] The MMA anticipates the removal of marijuana from Schedule I (*see* 35 P.S. § 10231.2108), but our General Assembly has not done so. Appellant does not cite § 10231.2108 in support of his argument. In any event, Marijuana remains a Schedule I controlled substance after an amendment to § 780-104 set to take effect on October 24, 2019. 2018 Pa. Laws 662. Likewise, Pennsylvania House Bill 616, introduced on February 28, 2019, does not address the classification of marijuana. 2019 PA H.B. 616.

"deprive any person of life, liberty, or property, without due process of law [.]" U.S. CONST. amend. XIV, § 1. Similarly, the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA CONST. art. I, § 1.

The government, through its police power, may enact laws that limit the enjoyment of personal liberty and property. *Commonwealth v. Gambone*, 101 A.2d 634, 636 (Pa. 1954). The government's police power is, however, subject to constitutional restrictions and judicial review. *Id.*

> The constitutional analysis applied to the laws that impede upon these inalienable rights is a means-end review, legally referred to as a substantive due process analysis. Under that analysis, courts must weigh the rights infringed upon by the law against the interest sought to be achieved by it, and also scrutinize the relationship between the law (the means) and that interest (the end). Where laws infringe upon certain rights considered fundamental, such as the right to privacy, the right to marry, and the right to procreate, courts apply a strict scrutiny test. Under that test, a law may only be deemed constitutional if it is narrowly tailored to a compelling state interest.
>
> Alternatively, where laws restrict the other rights protected under Article 1, section 1, which are undeniably important, but not fundamental, Pennsylvania courts apply a rational basis test. According to that test, which was defined by this Court almost a century ago, a law must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained.

*Nixon v. Commonwealth*, 839 A.2d 277, 287 n.15 (Pa. 2003) (internal citations and quotation marks omitted).

- 10 -

Instantly, Appellant requests rational basis review. The Pennsylvania Supreme Court has written that the substantive due process guarantees under the Pennsylvania Constitution are "substantially coextensive" with those of the Fourteenth Amendment, but that "a more restrictive rational basis test is applied under [the Pennsylvania] Constitution." *Nixon v. Commonwealth*, 839 A.2d 277, 287 n.15 (Pa. 2003). Appellant relies on *Nixon* in his brief but he does not acknowledge the distinction between the federal and state rational basis tests. Because we conclude that Appellant's argument fails under Pennsylvania law, it necessarily fails under the less restrictive federal test.

Our Supreme Court recently described the rational basis analysis in detail:

> Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts.

> Thus, under our state charter, we must assess whether the challenged law has a real and substantial relation to the public interests it seeks to advance, and is neither patently oppressive nor unnecessary to these ends. Nevertheless, we bear in mind that, although whether a law is rationally related to a legitimate public policy is a question for the courts, the wisdom of a public policy is one for the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements.

***Shoul v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing***,
173 A.3d 669, 677-78 (Pa. 2017).

Appellant claims the Commonwealth violated substantive due process by prosecuting for possession with intent to deliver a Schedule I substance that has accepted medical use. This is, by and large, the due process argument raised in ***Waddell***. Nonetheless, we are cognizant that the ***Waddell*** Court did not find a need to address the law of due process because it rejected the argument on statutory construction grounds. Instantly, we conclude that Appellant's argument fares no better under the law of substantive due process, regardless of the subsequent enactment of the MMA.

Most importantly, Appellant fails to identify the nature of the right implicated here. In ***Nixon*** and ***Shoul***, for example, the defendants argued that the laws in question were unconstitutional **because** they improperly restricted the defendants' right to pursue a lawful occupation. We cannot write a similar summary of Appellant's argument, as it is unclear what would follow the word "because." In other words, it is clear that Appellant believes marijuana's continued Schedule I classification is unconstitutional, but it is not clear which right Appellant believes is unnecessarily restricted by that classification. His brief contains a history of the criminalization of marijuana, in which he purports to demonstrate that marijuana's inclusion on the federal Schedule I was, in large part, the product of the Nixon administration's animus toward some of its most common users, including racial minorities and

persons opposed to the Vietnam War. Appellant's Brief at 21-26. Appellant thus argues that criminalization of the possession and distribution of marijuana under Pennsylvania's Schedule I, which largely tracks the federal version, is arbitrary. Even if we were to assume that Appellant's historical account is accurate (we need not and do not opine on the matter), that assumption would not lead to the conclusion that the Commonwealth is powerless to regulate marijuana in the way that it has. Appellant's historical argument does not preclude the possibility of a rational basis for including marijuana on Schedule I.

In asking for rational basis review, Appellant has disavowed the violation of any fundamental right. Thus, Appellant must assert the impingement of a right that is important, but not fundamental. He does not do so. Appellant relies in part on *Nixon*, but growing and distributing recreational marijuana is not a lawful occupation. Appellant therefore cannot be asserting an unusual and unnecessary restriction on the right to pursue a lawful occupation, as were the litigants in *Shoul* and *Nixon*. Appellant develops no legal argument with regard to any other important right.

Likewise, Appellant does not argue that regulation of marijuana bears no real and substantial relation to a public interest. Appellant does not argue, for example, that marijuana should be removed from the list of controlled substances because the Commonwealth has no valid interest in regulating it. Appellant does not deny that marijuana is a psychoactive drug that causes

impairment to its users.[4]  He simply argues that marijuana cannot remain on Schedule I because it has accepted medical use, and his conviction should fall on that basis.  We observe, nonetheless, that the five-year statutory maximum punishment applicable to possession with intent to deliver marijuana (as well as many other Schedule I drugs) applies to Schedule II and Schedule III substances.  35 P.S. § 780-113(f)(2).  Thus, a reclassification of marijuana to Schedule II or III—both of which include drugs with accepted medical use—would not alter the potential punishment for possession with intent to deliver it.

In summary, Appellant's argument that marijuana's Schedule I classification violates substantive due process is patently insufficient to overcome the strong presumption of constitutionality that a legislative enactment enjoys.  In *Jezzi*, this Court considered an apparently similar argument from Appellant's counsel and rejected it because Jezzi failed to explain the right involved.  *Jezzi*, 2019 WL 1870750 at *3.  Likewise, the *Waddell* Court held, as a matter of statutory construction, that the medical

_____

[4] We note our agreement with the panels in *Jezzi* and *Waddell* that proper regulation of marijuana, with the ongoing scientific study of the potential benefits and hazards of its various components, is a matter best left to our General Assembly. *Jezzi*, 2019 WL 1870750, at *8; *Waddell*, 61 A.3d at 207 n.20. *See, e.g.*, Moises Velasquez-Manoff, *Can CBD Really Do All That?*, N.Y. TIMES, May 14, 2019, magazine; Gruber, et. al, *The Grass Might Be Greener: Medical Marijuana Patients Exhibit Altered Brain Activity and Improved Executive Function after 3 Months of Treatment*, FRONTIERS IN PHARMACOLOGY, Volume 8, Article 983 (January 17, 2018).

value of marijuana does not create a due process problem with regard to the continued classification of marijuana as a Schedule I controlled substance. For the reasons explained above, we reach the same conclusion, in accord with both *Jezzi* and *Waddell*.

Finally, we consider Appellant's argument that marijuana's continued Schedule I classification violates his right to equal protection. "Appellant contends that making marijuana available as a medicine through Pennsylvania's medical cannabis law denies anyone who is not a registered patient equal protection by prosecuting that individual for possession of a Schedule I controlled substance." Appellant's Brief at 32.

The applicable law is well settled. "The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." *Jezzi*, 2019 WL 1870750 at *5 (quoting *Commonwealth v. Bullock*, 868 A.2d 516, 524 (Pa. Super. 2005), *affirmed*, 913 A.2d 207 (Pa. 2006), *cert. denied*, 550 U.S. 941 (2007)). The law recognizes three levels of scrutiny, depending upon the nature of the right involved. *Id.* Appellant concedes that the lowest level of scrutiny—that the law be rationally related to a legitimate governmental interest—applies here. "Under the rational basis test, if any state of facts can be envisioned to sustain the classification, equal protection is satisfied." *Id.* (quoting *Commonwealth v. Albert*, 758 A.2d 1149, 1153 (Pa. 2000)).

The *Jezzi* Court considered the same argument presently before us. First, the *Jezzi* Court noted the *Waddell* Court's conclusion, *i.e.*, that marijuana could remain on Schedule I regardless of its accepted medical uses. *Id.* at *6. Thus, the *Jezzi* Court found no conflict between the CSA and the MMA as concerns any currently accepted medical use for marijuana. *Id.* at *7. This Court concluded that the CSA is "social legislation that falls within the purview of the General Assembly," and that it "furthers the legitimate government interest of public safety by protecting the public from unfettered access to unsafe substances." *Id.* "[A] genuine safety purpose existed when the General Assembly passed the CSA, and [a]ppellant failed to prove the Schedule I classification of marijuana is no longer rationally related to that legitimate government interest." *Id.* Accordingly, Jezzi's equal protection argument failed.

In summary, the *Jezzi* Court concluded that the continued classification of marijuana as a Schedule I controlled substance after enactment of the MMA does not offend constitutional equal protection. That holding is directly on point and controlling here. We further observe that Appellant's argument, quoted above, appears to assert that persons who wish to possess or use marijuana without a valid medical reason are denied equal protection as compared to persons who qualify for use and possession under the MMA. This argument, as Appellant phrases it, would call into question the constitutional validity of all prescription medication. To accept it, we would have to conclude

- 16 -

that the Commonwealth has no rational basis for permitting medical prescriptions of controlled substances but denying those substances to persons who want them for recreational purposes. To state that proposition is to refute it.

For all of the foregoing reasons, we conclude that Appellant's arguments lack merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/28/2019