J-S21022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CHARLES W. GUTHIER | : | |
| | : | |
| Appellant | : | No. 1579 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 13, 2021,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0000653-2018.

BEFORE:   DUBOW, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED AUGUST 22, 2022**

Charles W. Guthier appeals from the judgment of sentence imposing an aggregate of two-and-a-half to five years' incarceration, after the trial court convicted him of possessing child pornography.[1]  Investigators testified that Guthier voluntarily confessed to knowingly possessing three images of child pornography.  Because the suppression court found the investigators credible, we affirm.

On August 16, 2017, Guthier's home computer shared a video bearing a lewd title with a computer in a special investigative unit of the Office of the Attorney General of Pennsylvania.  *See* N.T., 11/13/21, at 26.  Guthier facilitated this file exchange through a peer-to-peer software known as eMule or BitTorrent.  That program allows users to make the files on their devices

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. § 6312(d).

(including images and videos) available for other BitTorrent users for download.

Upon viewing the video, agents identified it as child pornography. The file was one of a group of illicit videos circulating the Internet, known as the "Vicky Series." *Id.* The series displays "an identified victim . . . [who] was sexually assaulted between the ages of three and approximately 13 years old by her father." *Id.*

The investigators' crime-prevention software provided them with an IP Address. They then subpoenaed Comcast to obtain the identity of the IP Address's owner. Comcast identified Guthier as the user associated with that IP Address and gave agents his home address.

Next, the agents obtained a search warrant for Guthier's home, a small trailer. He lived there alone, although Guthier's 10-year-old son would visit every other weekend under a custody agreement between Guthier and the boy's mother.

The agents' search warrant was for the seizure of all Internet-ready devices, any items that might store child pornography (such as computer towers, hard drives, or USB drives), and any hardcopies of child pornography. Agents executed the warrant on January 24, 2018 at 7:29 a.m. Guthier did not answer the door when law enforcement knocked, but it was unlocked. Upon entering, investigators found Guthier emerging from one of the trailer's two bedrooms in only his bathrobe.

After warning Guthier pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and having him sign a memorandum waiving those rights, agents interrogated him. Guthier asked no questions regarding his rights, nor did he request an attorney. Special Agents Brittany Lauck and Travis Nye interviewed Guthier in the trailer's spare bedroom while other agents searched other rooms.

They recorded the interview in four segments. *See* Commonwealth's Trial Exhibit 8-A; 8-B. Agent Lauck paused the interview three times to speak with the forensic team and to receive updates on the search. The first part of the interview began at 7:43 a.m. and lasted 25 minutes. The second part started at 9:06 a.m. and lasted 50 minutes. The third part started at 10:06 a.m. and lasted 20 minutes. The final part started at 11:39 a.m. and lasted ten minutes. Guthier granted permission to record him each time the interview resumed. He never objected to being questioned.

Guthier appeared comfortable to Agent Lauck throughout the interview. He had his puppy, a pug, with him and petted it during the process. At one point, the pug fell asleep and was snoring on the recording. *See id.* Guthier was not handcuffed during the interview, and he was neither intoxicated nor impaired. *See* N.T., 8/21/18, 19-20. No one threatened him. *See id.* at 24.

During the first three interviews, Guthier stated that he primarily lived in the residence alone and occasionally had his 10-year-old son stay there. He also said he actively used file sharing programs for downloading television shows and adult pornography. The agents soon told him they were searching

- 3 -

for child pornography, and Guthier indicated his 10-year-old son could have downloaded it. He also said he leaves his door unlocked, and that his ex-partner had access to his house and Internet-ready devices. Guthier claimed he could have downloaded the child pornography accidentally.

After the first three interviews, agents searched Guthier's spare bedroom and found an old hard drive. The forensic team searched it in their on-scene van and uncovered three images of child pornography.

Special Agent Gordon Goodrow confronted Guthier about the discovery. This prompted agent Goodrow and Special Agent Robert Deeter to conduct the fourth recorded interview of Guthier in the living room. Neither agent shouted, raised his voice, or threatened Guthier during the search and the interview. *See id.* at 29-30; 34. In light of the forensic team's discovery, Guthier revised his statement, as follows:

> I have . . . upon several occasions . . . downloaded child porn, and, um, knew it was wrong . . . in August I did download a video . . . it's the last one I downloaded fully, but I have downloaded others partially since, um, I was, had a change of heart, in recent times and I deleted the files before they could be fully downloaded, because I didn't want to be a person who views child porn . . . it was about the porn, and it wasn't about actual . . . to me, I know that those are actual children being abused in those videos, but to me, there was a disconnect between the videos and what happened, actually happened to those kids, like it wasn't real . . . .

Commonwealth's Trial Exhibit 8-A; 8-B at 74, 79. The last video Guthier fully downloaded was the Vicky file that his computer shared with the investigative computer through the peer-to-peer software in August of 2017. The forensic

team's investigation revealed that Guthier accessed the Vicky file as recently as January 17, 2018, a week prior to the execution of the search warrant.

According to Guthier, he "actually saw part of that [video] last week" and he downloaded child pornography for "sexual gratification." *Id.* at 75-76. He would search his peer-to-peer software for terms such as "PTHC"[2] and "girl suck cum," which Guthier knew indicated child porn. *Id.* at 77. Finally, the images of child pornography on Guthier's old hard drive were there, because he looked at child pornography as early as 2014. *See id.* at 78.

The agents arrested him. While in transit to investigative headquarters, Guthier told an agent the full name of the victim in the "Vicky" video and that he had researched her. He provided these statements without any prompting or questioning from the agents.

A few months later, Guthier filed a motion to suppress his inculpatory statements on the grounds that he "believed and therefore averred that while the recording was turned off, the [he] was coerced into making [the] incriminating statements to the agents." Guthier's Omnibus Pretrial Motion at 2.

At the suppression hearing, four investigating agents testified to the facts related above. Guthier then testified against them. He claimed that, when the recording was off, the agents shouted at him and threatened to

---

[2] According to the investigating agents, "PTHC" is an Internet abbreviation for "preteen hardcore."

charge him with additional, unsubstantiated offenses if he did not give them the answers they wanted.

In closing arguments to the suppression court, Guthier's counsel limited the issue to one of credibility. She said:

> we would like the [suppression] court to credit Mr. Guthier's statement here today for a few reasons. You know, he could have sat up there and alleged something totally outlandish occurred, that he was threatened at gunpoint or something along those lines. He didn't. He gave very specific and detailed threats that were made to him, which is why he ultimately gave the statement that he gave in this case. And I think the [suppression] court should credit that and find that his waiver of his right to remain silent was not obtained in a voluntary manner.

N.T., 8/21/18, at 53-54. Defense counsel made no other argument.

The suppression court found Guthier incredible and refused to suppress his inculpatory statements.

The matter proceeded to a non-jury trial. The trial court convicted and sentenced Guthier as described above. He filed post-sentence motions, which the court denied. This timely appeal followed.

Guthier raises three issues on appeal. They are as follows:

1.   Whether the trial court erred in denying [Guthier's] motion to suppress where his statement was coerced and involuntary?

2.   Whether the trial court erred in finding [Guthier] guilty when the verdict went against the weight of the evidence in that the Commonwealth failed to show the defendant knowingly possessed the pornography?

3.     Whether the trial court erred in finding [Guthier] guilty where the Commonwealth failed to present sufficient evidence of [his] knowing possession?

Guthier's Brief at 4.

First, Guthier asserts the trial court erred by refusing to suppress the inculpatory statements that he made to the agents during the search of his home. Guthier argues this issue based upon his own rendition of events that the suppression court rejected as incredible. *See id.* at 17-19. He also misconstrues the time frame of the search by asserting that the agents began the search "at 7:29 a.m. and the last interview concluded at 11:49 *p.m.* The agents did not find child pornography until after 10:26 *p.m.*" *Id.* at 17 (emphasis added). The record indicates that the interview concluded at 11:49 a.m., and the agents discovered the child pornography by 10:26 a.m. *See* N.T., 8/21/18, at 13.

When this Court reviews an order denying suppression, the losing party is not entitled to rely upon his version of events to craft a story more favorable to himself than the one the Commonwealth proved below. Instead, our scope of review is "limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the [suppression-hearing] record as a whole." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013).

Here, Guthier claims the agents coerced him by threatening to "kick [his] ass," called him a "sick son of a bitch," and threatened to "nail [him] to the wall for this." Guthier's Brief at 18. These allegations directly contradict

the testimony of the four agents. The agents all consistently testified that no one threatened Guthier or intimidated him in any way. According to the agents, no one even raised their voices during the interrogation of Guthier or at any time during the search. Agent Goodrow also did not testify to telling Guthier that "he may release him if he cooperated" with the investigation. *Id.* Thus, these factual allegations by Guthier against the agents are outside our scope of review. We may only review the evidence of the Commonwealth, the party that prevailed below, and Guthier's uncontradicted evidence. *See In re L.J.*, *supra*.

According to the agents, they engaged in no improper conduct, nor did they observe improper conduct by any member of law enforcement during the search of the trailer or the integration of Guthier. The suppression court credited the agents' testimony.

That credibility determination binds this Court. Critically, Guthier does not assert the facts the agents related prove they coerced him into waiving his right to remain silent. Therefore, we dismiss this first issue as meritless.

As his second appellate issue, Guthier argues the trial court erred by convicting him "when the verdict went against the weight of the evidence in that the Commonwealth failed to show [Guthier] knowingly possessed the [child] pornography." Guthier's Brief at 25. Guthier has waived this issue by failing to raise it in his post-sentence motion. *See* Pa.R.Crim.P. 607; *see also* Trial Court Opinion, 2/14/22, at 10. We dismiss this issue as waived.

Finally, Guthier claims there was insufficient evidence to support his conviction on three counts of child pornography. He asserts the record is devoid of evidence establishing that he knowingly possessed the child pornography on his hard drive from 2014.

Regarding the sufficiency of the evidence to convict, "our standard of review is *de novo*; however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." ***Commonwealth v. Rushing***, 99 A.3d 416, 420–21 (Pa. 2014). "Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder." ***Commonwealth v. Johnson***, 236 A.3d 1141, 1151–52 (Pa. Super. 2020), *appeal denied*, 242 A.3d 304 (Pa. 2020).

A person commits possession of child pornography if he "knowingly possesses or controls any . . . computer depiction [of] a child under the age of 18 years engaging in a prohibited sexual act . . . ." 18 Pa.C.S.A. § 6312(d). Guthier only challenges the statute's *mens rea* element on appeal — *i.e.*, he claims the Commonwealth did not prove that he knowingly possessed the three depictions of child pornography on the 2014 hard drive.

This theory contradicts the confession Guthier made when the agent's searched his home. Agent Goodrow specifically questioned Guthier about the images of child pornography uncovered on the 2014 hard drive. The agent said, "the hard drive we found with the child pornography on it has images

from 2014 . . . that was from a desk top hard drive . . . Correct?" Commonwealth's Trial Exhibit 8-B at 78.

Guthier relied, "Yeah." ***Id.***

The agent asked, "you would admit that, in 2014, you were looking at child pornography?" ***Id.***

Instead of denying any knowledge of child pornography on his old hard drive or blaming it on someone else, Guthier said, "If it's on the hard drive then, yeah, I was . . . I don't remember every specific, most of the time it's the - - I did this when I was drunk." ***Id.***

Based upon that admission the trial court could reasonably find Guthier knowingly possessed the child pornography on his 2014 hard drive. Those statements along with Guthier's confession to using child pornography for sexual gratification clearly and sufficiently prove Guthier had the necessary *mens rea* to commit the offenses charged. He knew he was possessing the child pornography when he downloaded the three images onto his old hard drive.

Merely because Guthier forgot there was incriminating evidence on his 2014 hard drive by the time investigators discovered it, does not negate the fact that he originally possessed the illicit material with full knowledge of its nature. Guthier's original knowledge, acquired in 2014 and confessed to in 2018, constituted three violations of 18 Pa.C.S.A. § 6312(d).

His sufficiency claim is meritless.

- 10 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2022