J-A24033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSE MIGUEL ZAYAS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN ANTONIO GARMENDIA | : | No. 1248 EDA 2024 |
| BRIZUELA, AND WENDY VANESSA | : | |
| RODRIGUEZ TRIMINIO | : | |

Appeal from the Order Entered April 9, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2023-005583

BEFORE:  LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED JANUARY 8, 2025**

Jose Miguel Zayas ("Zayas") appeals from the custody order that, *inter alia*, denied his request for predicate findings that would enable E.X.G.R. ("Child") to petition the United States Citizenship Immigration Services ("USCIS") for special immigrant juvenile status ("SIJS").  After careful consideration, we reverse and remand with instructions.

We gather the relevant factual and procedural history of this matter from the certified record.  Child was born in San Pedro Sula, Honduras, in August 2006.  She is the biological daughter of Juan Antonio Garmendia Brizuela ("Father") and Wendy Vanessa Rodriguez Trimino ("Mother") (collectively, "Parents").  **See** N.T., 3/21/24, at 11.  The principal evidence concerning Child's life in Honduras was garnered from her own testimony, which was facilitated by an interpreter.  **See id**. at 5-6.

Child averred that she resided in Honduras with Parents and her unnamed biological brother, who was born sometime in 2015. *See id*. at 13. Child explained that Father ceased living with the family sometime between 2013 and 2017. Thereafter, his contact with the family was sporadic and he ceased providing material support to the family. *See id*. at 13-14. Child testified that, following Father's departure from the home, Mother began to abuse alcohol and ceased providing care for her children. *See id*. at 14. Consequently, at the age of approximately eight years old, Child became responsible for caring for her younger brother. *See id*. at 15. Child was also forced to stop attending school in 2020. *See id*. at 22. When Child expressed reluctance at continuing to provide childcare, Mother threatened to "hurt herself" and "take" Child's younger brother "with her." *See id*. at 16.

Zayas's husband, Ever Samir Luna ("Luna"), has extended family members who resided near Child's home in Honduras and often provided her family with food after Parents abdicated their parental responsibilities. *See id*. at 15, 40-41.

At some point in 2021, Child became pregnant when she was approximately fifteen years old. *See id*. at 16. Child averred that neither her family, nor the family of her child's unnamed father, supported her pregnancy. *See id*. Thereafter, Child departed Honduras and traveled by bus to the United States with "caravans" that she claimed did not require her to pay a fee. *See id*. at 20-21. She entered the United States at Hidalgo, Texas, on

April 4, 2022. *See id*. at 23. Initially, Child was placed into a temporary group home. Child subsequently contacted Zayas, who resides with Luna in Chester, Pennsylvania. *See id*. at 21-23. Ultimately, Child was released into Zayas's custody in May 2022. Although the date of birth is not in the certified record, Child gave birth to a son who also resides with her. *See id*. at 12.

In 2023, Zayas filed a custody complaint seeking sole legal and physical custody of Child as well as a petition for special relief requesting predicate judicial findings in favor of Child being granted SIJS. On March 21, 2024, the trial court held a consolidated hearing on both petitions. Zayas and Child were both present and testified. Parents did not appear, or otherwise participate in, these proceedings.[1] In addition to Child's testimony regarding her life in

_____

[1] We note that "a parent outside the Commonwealth is entitled to notice and an opportunity to be heard in accordance with our law or the foreign state's law, but Pennsylvania does not require the absent parent to participate in the proceedings in order for our courts to have jurisdiction over the custody action." *Velasquez v. Miranda*, 321 A.3d 876, 884 n.2 (Pa. 2024). Service of process outside of the Commonwealth is generally governed by Pa.R.C.P. 404, which permits, *inter alia*, a "competent adult" to hand a copy of the at-issue pleading to the defendant. *See* Pa.R.C.P. 402(a)(1), 404(1). However, adults who are "related" to a litigant are prohibited from personally delivering service of process. *See* Pa.R.C.P. 76. During the custody hearing, it came to light that the sister of Zayas's sister-in-law, Maryori Luna Alvarado, personally delivered copies of the custody complaint to Parents at their respective residences in Honduras. *See* Certificate of Service, 3/7/24, at 1-2; *see also* N.T., 3/21/24, at 24-25. In its Rule 1925(a) opinion, the trial court concluded that Ms. Alvarado's delivery of service of process was "not permissible" pursuant to Rule 76. *See* Trial Court Opinion, 5/21/24, at 7. Nonetheless, the trial court ultimately considered and granted the custody petition, in part, on the merits. *Id*. While this procedural history is concerning, our review of Pennsylvania law has revealed no precedent that relatives of relatives-in-law

*(Footnote Continued Next Page)*

Honduras, she confirmed that Zayas has provided her with care, food, and shelter since May 2022. *See id*. at 16-17. Child also averred that Zayas helped her re-enroll in school. *See id*.

On April 9, 2024, the trial court entered an order awarding Zayas "temporary shared legal and primary physical custody" of Child, while providing Mother with "liberal visitation" rights. Amended Order, 4/9/24, at 1 (unpaginated). Concomitantly, the trial court denied Zayas's request for predicate findings in support of Child being granted SIJS status. *See id*. The trial court also authored factual and legal findings in support of its holdings.

Zayas filed a timely notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a responsive opinion pursuant to Rule 1925(a)(2)(ii).

Zayas raises the following issues for our review:

> I. Did the trial court abuse its discretion or commit an error of law when it denied . . . Zayas's request for a finding that reunification of Child with [F]ather is not viable due to abandonment and serious physical neglect where, *inter alia*, the court found that [F]ather has been completely absent from Child's life since 2017, providing no support, leaving Child without food and other essentials of life, causing Child to miss school and eventually cease her education altogether so that she could work to support herself and her younger brother?
>
> II. Did the trial court abuse its discretion or commit an error of law when it denied . . . Zayas's request for a finding that reunification of Child with [M]other is not viable due to serious physical neglect where, *inter alia*, the court found that [M]other,

---

qualify as being "related" for the purposes of Rule 76. Accordingly, we observe no fatal defect with respect to service of process.

who suffers from alcohol use disorder, was unable to care for or provide Child with adequate essentials of life, including food, leaving Child to rely on the kindness of neighbors for survival, and causing Child to miss school and eventually cease her education altogether so that she could work to support herself and her younger brother?

III. Did the trial court abuse its discretion or commit an error of law when it denied . . . Zayas's request for a finding that it is not in Child's best interest to return to Honduras, where her basic physical, emotional, and educational needs were not being met and where there would be no one to care for her, despite awarding . . . Zayas custody after reviewing the best interest factors?

Zayas's Brief at 5-6 (unnecessary capitalization omitted).

Initially, we note that Zayas's claims for relief implicate only the trial court's order denying Zayas's request for predicate judicial findings in support of SIJS. Our Supreme Court recently discussed the applicable standard and scope of review with respect to SIJS issues that arise in the context of custody proceedings. ***See Velasquez v. Miranda***, 321 A.3d 876, 891 (Pa. 2024). Specifically, the High Court noted that our scope of review in this context is plenary since it implicates issues pertaining to child custody. ***See id***. (reiterating that "an appellate court is not bound by the trial court's inferences drawn from its findings of fact, and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are competently supported"). Generally, an appellate court may not "interfere with the trial court's factual conclusions unless they are unreasonable in view of the trial court's factual findings and thus represent an abuse of discretion." ***Id***. Thus, we must conduct a plenary review of the instant certified record to

ascertain whether the trial court's conclusions are reasonably supported by its factual findings.

SIJS "is an immigration classification that provides humanitarian protection for certain minors located in the United States." *Velasquez*, 321 A.3d at 882 (citing 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(b)). Specifically, the Immigration and Nationality Act ("INA") defines SIJS, in pertinent part, as a child immigrant who is present in the United States and satisfies at least one of the following additional criteria:

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status[.]

8 U.S.C. § 1101(a)(27)(J). Generally speaking, SIJS "allows immigrant children to seek lawful residency in the United States in order to remain where their needs are best met and avoid deportation with, or back to, a parent that maltreated them." *Velasquez*, 321 A.3d at 882-83.

From a procedural standpoint, "[t]he road to [SIJS] classification requires stops in both a state and federal decision-making tribunal. [USCIS]

promulgates applicable regulations and policy, conducts interviews, screens for fraud and other concerns, adjudicates all [SIJS] applications, and determines whether to grant [SIJS] classification to a child." *Id*. at 883. Although the USCIS renders the final determination regarding applications for SIJS, state courts play an integral role in these proceedings:

> The USCIS application process is extensive and requires, *inter alia*, a state court order that includes specific conclusions of law, or predicate "judicial determinations." *See* 8 C.F.R. § 204.11.
>
> The state court with "jurisdiction under [s]tate law to make judicial determinations about the dependency and/or custody and care of juveniles," described in the federal provisions as a "juvenile court," must issue an order that includes "dependency or custody," "parental reunification," and "best interest" determinations." *Id*. Specifically, the state court must determine whether: (1) "reunification with [one] or both of the child's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law," and (2) "it would not be in the child's best interest to be returned to the child's or parent's previous country of nationality or country of last habitual residence." 8 U.S.C. § 1101(a)(27)(J)(i)-(iii). It is the resulting state court order containing these predicate judicial determinations that an applicant must present to USCIS when seeking SIJ[S] classification.

*Velasquez*, 321 A.3d at 883. Thus, "the state court does not render an immigration decision but rather makes factual determinations predicate to USCIS's SIJ[S] decision." *Orozco v. Tecu*, 284 A.3d 474, 477 (Pa. Super. 2022).

Our High Court has also emphasized that petitioners need only establish their entitlement to predicate SIJS determinations by a preponderance of the evidence. *Velasquez*, 321 A.3d at 906 (collecting cases). Specifically, our

Supreme Court has explained that a Pennsylvania court presented with a request for an SIJS judicial determination is expressly authorized by federal law to issue predicate findings in support of SIJS if all three of the following elements are established by a preponderance of the evidence:

(1) The court has exercised its jurisdiction as authorized by Pennsylvania law to determine the dependency and/or custody and care of a child;

(2) Reunification with one or both of the child's parents is not viable due to abuse, abandonment, neglect, or a similar basis under Pennsylvania law; and

(3) It is not in the child's best interest to be returned to the child's or their parent's country of nationality or last habitual residence.

***Velasquez***, 321 A.3d at 895 (citing 8 C.F.R. § 204.11(a), (c), & (d)(5)(i); ***see also*** 8 U.S.C. § 1101(a)(27)(J); ***Orozco***, 284 A.3d at 477.

At the time that the trial court denied Zayas's SIJS petition, our Supreme Court had not yet issued its holding in ***Velasquez*** concerning the appropriate resolution of controversies of this nature. Zayas similarly did not have the opportunity to raise the applicability of ***Velasquez*** before the trial court. Additionally, our High Court noted that this particular area of law lacks clarity, which has been an evident source of confusion to the trial and appellate courts of Pennsylvania. ***See Velasquez***, 321 A.3d at 905. Nonetheless, our precedent generally provides that a "decision announcing a new rule of law is applied retroactively so that a party whose case is pending on direct appeal is entitled to the benefit of the changes in the law." ***In re L.J.***, 79 A.3d 1073,

1087 (Pa. 2013). A close review of ***Velasquez*** is, therefore, appropriate and necessary here.

In ***Velasquez***, a mother and her children fled Guatemala following a violent "history of abuse" at the hands of the children's father, who also did not adequately provide for the family. ***Velasquez***, 321 A.3d at 883-84. Following their arrival in Pennsylvania, the mother initiated custody litigation in the Delaware County Court of Common Pleas seeking sole legal and physical custody, while concomitantly requesting SIJS predicate findings based upon the "alleged abuse, abandonment, and neglect" perpetrated by the children's father. ***Id***. at 884. Following a consolidated hearing, the trial court awarded the mother sole legal and physical custody. ***See id***. at 887.

The trial court denied, however, the mother's request for SIJS predicate findings. Specifically, the court cited several alleged factual deficiencies that it believed precluded the entry of findings in support of SIJS status. ***See id***. at 889 (holding that the record could not "definitively support a conclusion that it is in the best interests of [c]hildren to issue a[n] SIJ[S] order" due to the absence of information regarding the children's "prospects of success" in Guatemala or the parents' financial situation). This Court affirmed after concluding that the children were "simply ineligible" for SIJS as they had not been "adjudicated dependent or placed in the legal custody of a state agency or an individual or entity appointed by a state or juvenile court." ***See id***. at 890 (citing 8 U.S.C. § 1101(a)(27)(J)(i)).

Our Supreme Court granted allowance of appeal and reversed on both legal and factual grounds. With respect to eligibility, the High Court concluded that the Superior Court's interpretation of section 1101(a)(27)(J)(i) had been too narrow and that the at-issue statutory language plainly indicated that "proceedings in custody court . . . may properly support a[n] SIJ[S]-qualifying order for later presentation to USCIS." **Velasquez**, 321 A.3d at 901; **see also Orozco**, 284 A.3d at 477 (recognizing that a Pennsylvania custody court has jurisdiction to adjudicate requests for SIJS findings).

The High Court also disapproved of the trial court's preoccupation with the ultimate immigration implications of its holding, explaining as follows:

> The operative question is not whether immigration to the United States is in [the children's] best interest, but rather whether the facts found by the court –which in this case evidently supported an award of sole legal and physical custody to [their mother] – also supported the SIJ[S] predicate determinations that reunification with [their father was] not viable due to abuse, neglect, abandonment, or a similar basis under state law, and that a return to Guatemala [was] not in [the children's] best interest.

**Velasquez**, 321 A.3d at 905-06. Furthermore, the Court found that the trial court had held the mother "to an inapt burden of proof" by opining that the record must "**definitively** support a conclusion that it is in the best interest of the children to issue a[n] SIJ[S] order." **Id**. at 906 (emphasis in original). Rejecting this high evidentiary standard, our Supreme Court emphasized that SIJS petitioners need only establish their entitlement to predicate findings by a "preponderance of the evidence." **Id**.

- 10 -

Based upon the trial court's application of incorrect legal standards, the High Court set aside its SIJS findings. *See id*. Thereafter, the High Court conducted a "comprehensive review of the record" and reversed on the merits. *Id*. Ultimately, the Supreme Court remanded to the custody court for the entry of orders "containing predicate SIJ[S] determinations and corresponding factual support" consistent with its holding. *See id*. at 908.

Applying *Velasquez* to the instant case, we find the same errors of law on the face of the trial court's holdings. As a threshold matter, the trial court incorrectly opined that it may not entertain requests for SIJS predicate findings in the context of custody proceedings. *See* Findings of Fact and Conclusions of Law, 4/9/24, at 9-10 (erroneously concluding that SJIS requests are improper outside of the context of dependency or delinquency matters). As detailed above, our Supreme Court has rejected this position and affirmed that custody proceedings are an appropriate vehicle to seek SIJS findings. *See Velasquez*, 321 A.3d at 901.

The trial court also misapprehended the applicable burden of proof in an identical fashion to the trial court in *Velasquez*. Here, the trial court used an incorrect evidentiary standard when it stated, "the record in this matter does not definitively support a conclusion that it is in the best interest of [Child] to issue a[n] SIJ[S] order." Findings of Fact and Conclusions of Law, 4/9/24, at 10. In *Velasquez*, the trial court similarly used an incorrect standard when it concluded that the record could not "definitively support a conclusion that it

is in the best interests of [c]hildren to issue a[n] SIJ[S] order" due to the absence of information regarding the children's "prospects of success" in Guatemala or the parents' financial situation. *Velasquez*, 321 A.3d at 889. As explained by our High Court, SIJS petitioners need only establish their entitlement to predicate findings by a preponderance of the evidence, not by the high evidentiary standard of establishing a definitive conclusion. *See Velasquez*, 321 A.3d at 905-06.

Finally, as did the court in *Velasquez*, the trial court in the instant case displayed the same inappropriate preoccupation with Child's legal status, opining as follows:

> The court struggled not to believe that [Child's] departure from Honduras was really for the sole purpose of trying to benefit from the child custody laws in Pennsylvania and for her, and her child, to become a United States citizen, rather than the stated reasons in the petition alleging neglect[] and abandonment.

Findings of Fact and Conclusions of Law, 4/9/24, at 10; *see also Velasquez*, 321 A.3d at 905 (holding that "[t]he custody court inaccurately framed the issue as whether the issuance of an SIJ[S order was] in the best interest of [the c]hildren because it will enable them to pursue permanent lawful status and eventually citizenship").

As noted above, we recognize that the trial court rendered its analysis in this matter without the assistance of our Supreme Court's holding in *Velasquez*. Nonetheless, based upon the fundamental legal errors discussed above, we conclude that the trial court's findings with respect to Zayas's SIJS

petition must be set aside. **See id**. at 906 (holding that "[w]e reject the custody court's SIJ[S] findings because, as discussed *supra*, it applied the wrong legal standard and burden of proof"). There is simply no way to adequately harmonize the trial court's analysis with **Velasquez**.

Moreover, upon conducting a comprehensive and plenary review of the certified record, we conclude that Child is entitled to SIJS predicate determinations. **See id**. at 907 (citing **Interest of K.N.L.**, 284 A.3d 121, 133 (Pa. 2022)). Notably, the trial court did not find the testimony of Child to be credible regarding the manner in which Child traveled to the United States and ended up in the custody of Zayas. **See** Findings of Fact and Conclusions of Law, 4/9/24, at 6 (detailing the trial court's conclusion that Child was not credible in testifying that she had not paid to travel to the United States and did not initially intend to reside with Zayas upon departing from Honduras). Frankly, though, we fail to discern how the mere manner in which Child traveled to the United States is relevant to the pertinent statutory elements, particularly in light of our Supreme Court's recent guidance on this very issue. **See Velasquez**, 321 A.3d at 905-06.

Critically, the trial court did deem Child to be "somewhat credible" with respect to her descriptions of her life in Honduras. **See** Findings of Fact and Conclusions of Law, 4/9/24, at 4 (where the trial court stated "[h]aving observed the testimony and demeanor of both witnesses, the court did find their testimony to be somewhat credible"). Indeed, the trial court relied

entirely upon Child's testimony in crafting its factual history of the case and did not indicate that any of these aspects of Child's testimony were suspect or lacking in candor. **See id**. at 3-6. Accordingly, "there is no reason to disrupt its credibility determination[s] . . . as they are amply supported by the record." **Velasquez**, 321 A.3d at 906. Reviewing only the factual findings deemed credible by the trial court, we find that there is ample support for the issuance of predicate SIJS findings in the instant case.

Examining the first of the three statutory elements set forth in **Velasquez**, that the court has exercised its jurisdiction to determine the dependency and/or custody and care of a child, the instant petition fulfills this requirement since the trial court properly exercised jurisdiction in these custody proceedings and, thus, was empowered to adjudicate Zayas's SIJS petition.[2] **See id**. at 895.

With respect to the second statutory element, Child's testimony indicates that reunification with both of her Parents is not viable. As to Father, Child's testimony indicates that he has abandoned his family and no longer provides any material support or care to Child. **See** N.T., 3/21/24, at 13-14. Child also testified that, following Father's abandonment, Mother ceased

---

[2] The instant case differs from **Velasquez** in that a non-familial individual standing *in loco parentis* sought custody of Child, as opposed to one of her parents. We do not find that this distinction affects the import of the holding in **Velasquez** since Zayas was awarded custody rights. **See Velasquez**, 321 A.3d at 897 (holding that "[t]he statute also covers children who are placed into the custody of individuals by the state court").

- 14 -

providing care for Child, began abusing alcohol, and used threats of self-harm to saddle Child with the responsibility of providing full-time care for her younger brother. *See id*. at 14-16. According to Child's testimony, these events caused her to drop out of school and forced the family to rely on charity from their neighbors to survive. *See id*. at 15. Following these flagrant parental abdications, we are also mindful that Child became pregnant at the tender age of approximately fifteen. *See id*. Whether characterized as neglect or abandonment, these evidentiary findings clearly indicate that reunification with Parents is not a viable option for Child.

Turning to the third and final statutory element, we also readily conclude that the evidence establishes that it is not in Child's best interests to return to Honduras. Instantly, there is no dispute that Zayas and his family are present in the United States and providing adequately for Child's needs. Indeed, the trial court found that Child's life has substantially improved since her departure from Honduras:

> [Child] testified that she has been with [Zayas] since leaving from Texas, and life is much better. [Zayas] has provided food and shelter for her, and her son, since she has been in the US. [Child] has also been registered in school, which she has consistently attended since enrollment, something she says she was unable to do if she had remained in Honduras. [Zayas] is able to provide for [Child's] daily needs, including taking her to all of her medical appointments.

Findings of Fact and Conclusions of Law, 4/9/24, at 4. Our review of the transcript corroborates the trial court's findings on this point. *See* N.T., 3/21/24, at 16-19. We also note that Child expressed a clear preference for

- 15 -

remaining in the custody of Zayas. ***See id***. at 19. Based upon the foregoing, we find that the third statutory element has also been met in this case. Given the trial court's award of physical and legal custody to Zayas, we find that it is not in Child's best interests to be returned to the care of her neglectful, or entirely absent, Parents in Honduras.

Based on the foregoing, we reverse and remand this matter to the trial court and direct it to enter an order for Child containing predicate SIJS determinations and corresponding factual support consistent with this memorandum. ***See Velasquez***, 321 A.3d at 908-09. The court's order awarding shared legal and physical custody of Child to Zayas and Mother remains intact. ***See id***.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/08/2025